Chief Judge Desmond
(dissenting). I vote to affirm. Appellant Belt’s causative negligence was proven almost beyond dispute and there were no errors on the trial.
Belt was both the owner and general contractor and directed all the work as well as fixing the sequence in which the various operations were carried on. On several earlier occasions similar concrete cheeks at other houses under construction had collapsed under like circumstances because of lateral pressure resulting from the backfill. The owner, therefore, knew that the doing of the backfilling between the cheeks before the trench was dug out alongside the check would create an unsafe condition and an unsafe place for digging. Nevertheless, the owner did the backfilling in advance of the trench digging and did nothing to guard against the resulting danger. There is nothing in the record to indicate any necessity for, or common practice of, doing the backfilling first. The owner and general contractor was under a duty to prevent or protect against the unprotected excavating since the owner contractor not only had full notice of the peril but had itself caused it (see Dudar v. Milef Realty Corp., 258 N. Y. 415, 419).
*137 While Belt probably did not have, originally, a duty to prop up the cheek so that it would not collapse into the excavation, nevertheless the jury could find that having created the pressure danger by backfilling, Belt had to provide supports or otherwise guard against the kind of accident that had happened before and, as was to be expected, happened here. Perhaps the furnishing of such braces or stays was the responsibility of plaintiff’s employer also but that does not absolve Belt from liability for its clearly proven and very grave fault.
This is not a case (like Zucchelli v. City Constr. Co., 4 N Y 2d 52) where there was on the general contractor no duty to furnish a safe place for the particular work because the injury occurred through the subcontractor’s own negligence in doing its own work. Here a prior, separate negligent act of the general contractor had made the area unsafe for the subcontractor’s excavating operation.
As to the supposed error in charging rule 23-8.1 of the Industrial Code (12 NYCRR 23.8) to the jury, the record shows that the court never told the jury that there was such a rule. He certainly did not tell them that a violation thereof would create absolute liability (see Conte v. Large Scale Development Corp., 10 N Y 2d 20, 29). In instructing the jury as to the general contractor’s duty to use due care to furnish a safe place, the court’s language was as follows:
‘‘ charge you that where there is any question of stability of structures adjoining or over areas to be excavated, such structures shall be supported where necessary by underpinning, sheet piling, shoring, bracing or other means to prevent injury to any employee. I further charge you that the defendant was not the insurer of the safety of the plaintiff and all other workers on the premises where construction was in progress. But it was its duty to so conduct the operation of construction so as to provide reasonable and adequate protection to the lives, the health and safety of all persons employed on said premises against risk.
“I further charge you that an owner acting as a general contractor has the duty of furnishing employees of subcontractors, as well as its own employees, with a reasonably safe place to work; that owners and builders have no responsibility for the manner in which operations are carried out by sub *138 contractors or their employees. Nor have they responsibility for the methods employed by subcontractors.
“ I further charge you that it is the duty of a general contractor to maintain premises under construction in a reasonably safe condition and to detect and remedy any unsafe or dangerous condition, if any, within a reasonable time after such detection so as to protect workers against such risks.”
On this record these instructions were fair and correct.
The judgment should be affirmed, with costs.
Judges Fuld, Van Voorhis and Burke concur with Judge Scileppi ; Chief Judge Desmond dissents and votes to affirm in an opinion in which Judge Dye concurs; Judge Bergan taking no part.
Judgment reversed, etc.